UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DORMOUTH CARLTON, | : |
| Plaintiff, | : |
| | : 14-cv-3399 (LAK)(KNF) |
| - against - | : |
| | : **AMENDED COMPLAINT** |
| OFFICER ROBERT SNEDEKER, SGT. ROBERT COCUZZA, SGT. MICHAEL FUNK, SGT. M. SUPRENANT, OFFICER NICOLE HUTTLE, OFFICER MARK WESLEY, OFFICER CARLOS LANPON, OFFICER J. THORPE, OFFICER S. CARLSON, OFFICER STEVENS, and JOHN DOE EMPLOYEES OF GREEN HAVEN CORRECTIONAL FACILITY 1-12, | : **Jury Trial Demanded** |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Dormouth Carlton, by his attorneys, alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil rights action, brought pursuant to 42 U.S.C. § 1983, stemming from Defendants' violation of Plaintiff's rights under the First Amendment to the Constitution of the United States and under federal law.

2.      Defendants knowingly and illegally engaged in a pattern of unlawful retaliation against Plaintiff in response to Plaintiff's exercise of his constitutionally-protected right to file inmate grievances and a federal lawsuit arising out of the use of excessive force against him by certain employees of Green Haven Correctional Facility ("Green Haven") and/or the New York State Department of Corrections and Community Supervision ("NYDOCCS").

3.      Defendants' actions were taken in their official capacities as Green Haven and/or NYDOCCS employees under color and pretense of the statutes, ordinances, regulations, customs

and usages of the State of New York, and were intended to punish, harass, and intimidate Plaintiff for filing grievances and a federal lawsuit relating to the use of excessive force against him, and to discourage and prevent Plaintiff from pursuing his federal lawsuit.

4. Despite Plaintiff's exemplary disciplinary history at Green Haven prior to the filing of his grievance alleging excessive force, since the filing of the grievance and a federal lawsuit related thereto, Plaintiff has been (i) repeatedly issued disciplinary tickets in successive fashion and repeatedly placed on keeplock; (ii) continually harassed, intimidated, and punished unfairly and without legitimate basis; (iii) placed in severely restrictive confinement, known as "the Hole," for extended periods of time and denied telephone privileges with his legal counsel concerning his federal lawsuit; (iv) denied showers by staff in violation of relevant New York State and/or Green Haven rules and regulations; and (v) transferred hundreds of miles to Attica Correctional Facility in Western New York without any prior notice or warning and without being provided the opportunity to object or inform his legal counsel and family.

## PARTIES

5. Plaintiff Dormouth Carlton, DIN #09A0216, is currently incarcerated at Attica Correctional Facility ("Attica") in Attica, New York.  Plaintiff was a prisoner at Green Haven, located in Stormville, New York until July 8, 2013, at which time he was transferred to Attica.

6. Defendant Corrections Officer Robert Snedeker is and was at all relevant times hereto employed by NYDOCCS as a corrections officer at Green Haven.

7. Upon information and belief, Defendant Sergeant Robert Cocuzza is and was at all relevant times hereto employed by NYDOCCS at Green Haven.

8. Upon information and belief, Defendant Sergeant Michael Funk is and was at all relevant times hereto employed by NYDOCCS at Green Haven.

9. Upon information and belief, Defendant Sergeant M. Suprenant is and was at all relevant times hereto employed by NYDOCCS at Green Haven.

10. Upon information and belief, Defendant Corrections Officers Huttle, Stevens, Wesley, Thorpe, Carlson, and Lanpon are and were at all relevant times hereto employed by NYDOCCS as corrections officers at Green Haven.

11. Upon information and belief, Defendants John Does 1-12 are and were at all relevant times hereto employed by NYDOCCS and Green Haven.

## JURISDICTION

12. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and Title 42 U.S.C. § 1983.

## PLAINTIFF'S FACTUAL ALLEGATIONS

**Plaintiff Arrives at Green Haven in April 2010**

13. Plaintiff was transferred from Clinton Correctional Facility to Green Haven in April 2010.

14. For approximately nine months, from April 2010 to December 2010, Plaintiff maintained an exemplary disciplinary record at Green Haven. During this nine-month period, Plaintiff did not receive a single ticket or citation for any violation of Green Haven rules, nor was he ever disciplined for any reason.

**Plaintiff Is Physically Abused in December 2010**

15. On December 13, 2010, Plaintiff had a verbal altercation with Green Haven corrections officer Natasha Trembath stemming from a misunderstanding regarding the contents of a package that Plaintiff received from his relatives.

16. As a result of the altercation, Plaintiff was issued a disciplinary ticket and ordered

to return to his cell.

17. Later that same day, at approximately 9:00 p.m., Plaintiff was led out of his cell to a secluded area of the facility and physically assaulted by Green Haven corrections officers Robert Snedeker, Shawn Morris, Natasha Trembath and an unidentified fourth officer, in retaliation for the earlier incident involving Officer Trembath.

18. A witness heard the assault take place and heard Plaintiff shouting "why are you hitting me?"

19. Following the assault, Plaintiff was returned to his cell. Plaintiff's cellmate witnessed that Plaintiff was in extreme pain throughout the night and was unable to stand or walk. The following morning, Plaintiff was transported to the Green Haven infirmary by wheelchair and kept overnight for observation.

**Plaintiff Files an Inmate Grievance and Federal Lawsuit**

20. On December 16, 2010, Plaintiff filed an internal inmate grievance, #GH-07697-10, with the Inmate Grievance Resolution Committee, reporting the assault and requesting that an investigation into the matter be conducted. That same day, Plaintiff's grievance was forwarded to the Green Haven superintendent.

21. On April 28, 2011, Plaintiff brought a federal civil rights action captioned *Carlton v. Morris, et al.*, 11-cv-3056 (DAB) (JCF) (S.D.N.Y.) (the "Lawsuit"). In the Lawsuit, which is currently pending, Plaintiff brings claims under 42 U.S.C. § 1983. Robert Snedeker, Shawn Morris and Natasha Trembath are named as defendants.

22. On April 17, 2012, Magistrate Judge Francis appointed pro bono counsel for Plaintiff in connection with the Lawsuit. 11-cv-3056 (DAB) (JCF) (S.D.N.Y.), Docket Entry 41.

The Lawsuit is currently pending before the Honorable Judge Batts in the District Court for the Southern District of New York.

23. Under the First Amendment, Plaintiff had a constitutionally-protected right to file the grievance relating to his assault and the Lawsuit.

**Plaintiff Repeatedly Is Retaliated Against Following His Grievance and Lawsuit**

24. Shortly after Plaintiff's filing of his grievance on December 16, 2010, Officer Snedeker pointed out Plaintiff to Sergeants Funk and Cocuzza while Plaintiff was in the Green Haven mess hall.

25. Following Plaintiff's filing of his grievance on December 16, 2010, Officer Snedeker and Sergeants Funk and Cocuzza would repeatedly "stare down" Plaintiff and otherwise attempt to intimidate him whenever they saw him.

26. Following Plaintiff's filing of the Lawsuit, Sergeant Funk told Plaintiff that he knew about the Lawsuit and that Plaintiff "will have a bad time" at Green Haven as a result of his filing suit against corrections officers Morris, Snedeker and Trembath.

27. Between January 2011 and March 2013, Plaintiff was repeatedly singled out and targeted by numerous corrections officers acting at the direction of Sergeants Funk and Cocuzza. Specifically, corrections officers acting at the direction of Sergeants Funk and Cocuzza repeatedly wrote Plaintiff disciplinary tickets and continually placed Plaintiff on "keeplock." These corrections officers included, but were not limited to, Officers Huttle, Stevens, Wesley, Thorpe, Carlson and Lanpon.

28. "Keeplocking" refers to the practice of confining an inmate to his cell as the result of a disciplinary infraction. While keeplocked, the inmate is kept isolated from the other inmates and has certain other privileges revoked.

29. Beginning immediately after Plaintiff's filing of his grievance on December 16, 2010, and continuing up through March 2013, Plaintiff received disciplinary tickets and/or was placed on keeplock approximately thirteen separate times by Green Haven corrections officers at the direction of Sergeants Funk and Cocuzza.

30. These disciplinary measures were imposed upon Plaintiff for the purpose of punishing, harassing, and intimidating Plaintiff because he filed a grievance in December 2010 and the Lawsuit in April 2011.

31. The disciplinary measures were imposed upon Plaintiff without a good faith basis and instead were carried out in retaliation for Plaintiff's filing of the grievance and/or Lawsuit.

32. Prior to Plaintiff's filing of his grievance on December 16, 2010, Plaintiff had not received a single disciplinary ticket at Green Haven, despite the fact that Plaintiff began his incarceration at Green Haven in April 2010.

33. Prior to Plaintiff's filing of his grievance on December 16, 2010, Plaintiff had not been placed on keeplock a single time at Green Haven, despite the fact that Plaintiff began his incarceration at Green Haven in April 2010.

34. Plaintiff continued to file inmate grievances relating to the baseless disciplinary tickets that were repeatedly issued against him by Green Haven corrections officers at the direction of Sergeants Funk and Cocuzza. Additionally, upon information and belief, several witnesses were present when many of the disciplinary tickets were issued to Plaintiff and directly observed the baseless nature of the tickets.

35. In February 2013, Sergeant Cocuzza told Plaintiff: "You will never see the light of day if you keep filing grievances."

36. Sergeant Cocuzza intended to intimidate Plaintiff and prevent him from filing inmate grievances by threatening to continue to enact disciplinary measures against him that were baseless, without merit, and meant to punish and harass Plaintiff.

37. As one example, on or around February 7, 2013, Plaintiff was issued a disciplinary ticket by Officer Carlson, acting at the direction of Sergeants Funk and Cocuzza, and was ordered to serve 45 days of keeplock confinement time for putting a piece of candy in his mouth after taking medication. This disciplinary measure was grossly disproportionate to the purported violation and was enacted to harass, intimidate, and punish Plaintiff for filing grievances and/or the Lawsuit.

38. As another example, at all relevant times Plaintiff walked with the aid of a cane due to injuries he sustained during the December 2010 assault. One day, Plaintiff fell in the Green Haven recreation yard and his cane broke. Although Sergeant Suprenant was not in the yard at the time and did not see Plaintiff's fall, he nevertheless issued or caused to be issued a disciplinary ticket to Plaintiff because of the broken cane and Plaintiff was ordered to serve 30 days of keeplock confinement. This disciplinary measure was grossly disproportionate to the purported violation and was enacted to harass, intimidate, and punish Plaintiff for filing grievances and/or the Lawsuit.

39. As another example, at one point the toilet in Plaintiff's cell became broken and would not stop running. Plaintiff informed Officer Thorpe of the situation and asked if someone could have a plumber fix the problem. Nothing was done to fix the toilet, which continued to run for three days and caused Plaintiff's cell to flood with water. As a result of the flooding, Officer Thorpe, acting at the direction of Sergeants Cocuzza and Funk, issued Plaintiff a disciplinary ticket and Plaintiff was ordered to serve 30 days of keeplock confinement. This disciplinary

measure was grossly disproportionate to the purported violation and was enacted to harass, intimidate, and punish Plaintiff for filing grievances and/or the Lawsuit. Officer Thorpe also issued other disciplinary tickets against Plaintiff that had no basis and were issued for the sole purpose of harassing, intimidating, and punishing Plaintiff.

40. In March 2013, several corrections officers acting at the direction of Sergeant Cocuzza, including Officer Snedeker, visited Plaintiff at his cell at 9:00 p.m. and performed an invasive and unwarranted search of Plaintiff's cell in an attempt to harass and intimidate Plaintiff.

41. In addition to issuing Plaintiff numerous pre-textual and baseless disciplinary tickets, between January 2011 and March 2013, Green Haven corrections officers acting at the direction of Sergeants Funk and Cocuzza deprived Plaintiff of showers and meals on numerous occasions in violation of New York State and/or Green Haven rules and regulations for the purpose of punishing, harassing, and intimidating Plaintiff.

42. For example, from February 5-27, 2013, Plaintiff was only allowed to shower a single time, in violation of New York State and/or Green Haven rules and regulations. Again, from March 23, 2013 to April 16, 2013, Plaintiff was only allowed to shower a single time, in violation of New York State and/or Green Haven rules and regulations.

43. Plaintiff filed numerous inmate grievances alleging that he was being deprived of showers and meals by Green Haven staff. In March 2013, Plaintiff asked Officer Stevens why he was being deprived of showers and repeatedly being issued baseless disciplinary tickets. Officer Stevens told Plaintiff that if Plaintiff did not stop writing grievances against Green Haven corrections officers, he would "end up in the hospital."

44. Following the filing of these grievances, Sergeant Cocuzza escorted Plaintiff into the Green Haven recreation yard and asked Plaintiff to write a note indicating that he was

receiving all of his required showers and meals.  When Plaintiff refused to do so, Sergeant Cocuzza became angry.

45. Following the incident with Sergeant Cocuzza, on or around March 8, 2013, Officers Wesley and Lanpon, acting at the direction of Sergeant Cocuzza, escorted Plaintiff to the Green Haven shower room to allow Plaintiff to take a shower.  While Plaintiff was in the shower room, Officers Wesley and Lanpon caused the water in the shower room to be cut off.  Officers Wesley and Lanpon then locked Plaintiff in the shower room with no water for approximately three hours, from 12:00 p.m. to 3:00 p.m.

46. When Plaintiff asked Officers Wesley and Lanpon why they had locked him in the bathroom with no water, they told Plaintiff that it was because he was continuing to file grievances and complaints against Green Haven staff.

47. These actions by Sergeant Cocuzza and Officers Wesley and Lanpon were in retaliation for Plaintiff's filing of inmate grievances and/or the Lawsuit, and were done for the substantial or motivating purpose of punishing, harassing, and intimidating Plaintiff.

**Plaintiff Is Placed in the Hole and Then Transferred to Attica Following Depositions in the Lawsuit**

48. On March 18, 2013, Officer Shawn Morris was deposed by Plaintiff's counsel in the Lawsuit.  By that time, Officer Morris had been transferred out of Green Haven.

49. Following his deposition, Officer Morris spoke with Officer Snedeker by telephone and complained to Officer Snedeker that his deposition had been "grueling."

50. Three days later, on March 21, 2013, Plaintiff received another disciplinary ticket and was yet again placed on keeplock.

51. Two days later, on March 23, 2013, following an administrative hearing involving certain of Plaintiff's disciplinary tickets, Officer Huttle issued Plaintiff a disciplinary ticket that

was without legitimate basis and which required Plaintiff to serve seven months in Green Haven's Special Housing Unit.

52. The Green Haven Special Housing Unit is known colloquially as "the Hole." Prisoners serving time in the Hole are denied most privileges afforded to other prisoners in the general population. Prisoners serving time in the Hole lose all telephone privileges and are locked in their cells for long stretches without exercise or social interaction.

53. Officer Huttle issued the disciplinary ticket and Plaintiff was placed in the Hole for the substantial or motivating purpose of punishing, harassing, and intimidating Plaintiff for filing inmate grievances and/or the Lawsuit.

54. While Plaintiff was serving his seven months in the Hole, Sergeant Funk spoke with Plaintiff and told him: "I'll be watching you," adding: "We know you have a pending lawsuit" and "none of this is being done to retaliate against you." Upon information and belief, Sergeant Funk was referring to the Lawsuit filed by Plaintiff alleging that Officers Snedeker, Morris, Trembath and others physically assaulted Plaintiff in December 2010.

55. While Plaintiff was serving his seven months in the Hole, he was deprived of the ability to speak with his legal counsel on the phone regarding the Lawsuit. On numerous occasions, Plaintiff's attorneys called Green Haven and were told that they could not speak with Plaintiff on the telephone.

56. On July 8, 2013, without any prior notice to Plaintiff or Plaintiff's legal counsel, Plaintiff was transferred from the Green Haven Special Housing Unit to Attica, located in Western New York. Plaintiff was placed in Attica's Special Housing Unit upon arrival. Plaintiff had no prior warning that he would be transferred to Attica and was not afforded any opportunity to contact his legal counsel or his family prior to the transfer.

57. Plaintiff's transfer to Attica was effectuated for the substantial or motivating purpose of punishing, harassing, and intimidating Plaintiff for filing inmate grievances and the Lawsuit.

58. Despite Plaintiff's clean disciplinary history prior to his filing of his grievance on December 16, 2010, Plaintiff has been (i) repeatedly issued tickets and continually placed on keeplock since that time; (ii) denied showers and meals by staff and repeatedly harassed, intimidated, and punished unfairly and without legitimate basis; (iii) placed in the Hole for an extended period and denied telephone privileges with his legal counsel concerning the Lawsuit; and (iv) transferred hundreds of miles away to Attica without any notice or warning.

59. As a result of this retaliatory conduct by Defendants or at Defendants' direction, Plaintiff has suffered serious personal injury and mental anguish.

## FIRST CAUSE OF ACTION
**(Retaliation by Defendants)**

60. Plaintiff repeats and realleges, as if set forth herein, the allegations of all of the preceding paragraphs.

61. By filing inmate grievances and the Lawsuit, Plaintiff was exercising his constitutionally-protected rights under the First Amendment to the United States Constitution.

62. Defendants, acting under color of law and in their official capacities as employees of Green Haven and/or NYDOCCS, deliberately harassed and intimidated Plaintiff and instituted disciplinary measures against Plaintiff, or caused others to institute adverse disciplinary measures against Plaintiff. Plaintiff's filing of inmate grievances and/or the Lawsuit was a substantial or motivating factor for Defendants' wrongful conduct.

63. Defendants' conduct caused Plaintiff to be continually placed on keeplock and in the Hole and, eventually, transferred to Attica, in violation of Plaintiff's First Amendment rights of freedom of speech and to petition the Government for the redress of grievances.

64. As a direct and proximate result of these adverse retaliatory actions, Plaintiff has been caused to suffer serious personal injury and mental anguish.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff hereby requests that, pursuant to 42 U.S.C. § 1983, the Court enter judgment:

(a) For an award of damages against Defendants, in an amount to be proven at trial, but including at a minimum:

(i) Compensatory and punitive damages, awarded jointly and severally, against Defendants; and

(ii) Attorney's fees, costs and expenses.

(b) For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
         August 15, 2014

                                   Respectfully submitted,

                                   _/s/ Jeremy A. Berman_____
                                   Jeremy A. Berman
                                   Alexander C. Drylewski
                                   Danielle R. Gill
                                   Matthew S. Barkan
                                   SKADDEN, ARPS SLATE, MEAGHER
                                      & FLOM LLP
                                   Four Times Square
                                   New York, New York 10036
                                   Phone:  (212) 735-3000
                                   Fax: (212) 735-2000
                                   jeremy.berman@skadden.com
                                   alexander.drylewski@skadden.com
                                   danielle.gill@skadden.com
                                   matthew.barkan@skadden.com

                                   *Attorneys for Plaintiff Dormouth Carlton*